# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER STEVENS, SR.,<br><br>                Plaintiff,<br><br>vs.<br><br>COUNSELOR ROBLES,<br><br>                Defendant. | CASE NO. 06CV2072-LAB (LSP)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>[Dkt No. 12] |

      This 42 U.S.C. § 1983 prisoner civil rights matter is before the court on defendant Counselor Robles' ("Defendant") Motion To Dismiss plaintiff Christopher Stevens, Sr.'s ("Stevens") First Amended Complaint ("FAC") for failure to state a claim ("Motion"). Stevens is a state prisoner proceeding *pro se* with a 42 U.S.C. § 1983 civil rights action. He challenges denial of family visitations, and the fact and process of imposing an "R" suffix custody classification he alleges caused the deprivation of his family visitation rights, as infringing his Fourteenth Amendment liberty interests and Due Process rights. Stevens filed no opposition to the Motion. Under Civil Local Rules, failure to object to a Motion may be construed as consent to the granting of the motion. C<small>IV</small>. L. R. 7.1(f)(3)(c). Magistrate Judge Leo S. Papas entered a Report and Recommendation ("R&R") recommending Defendant's Motion be granted. Stevens filed no Objections to the R&R. For the reasons discussed below, the R&R is **ADOPTED** and the FAC is **DISMISSED** in its entirety for failure to state a claim.

I.  **DISCUSSION**

A.  **Background**

Stevens alleges the state prison has wrongfully assigned an "R" suffix to his custody classification designating him a sex offender. He contends the "erroneous" placing of the "R" suffix violates his Fourteenth Amendment Due Process rights because it is predicated "on a[n] alleged police report not a[n] arrest or conviction for the said offense." FAC p. 3. The only liberty interest consequence he purports to elaborate in the FAC is elimination of family visitations. He identifies the visitation rights as those set forth in the "policies, procedures, and protocols" of the state's " 'Family Visitation' guidelines." FAC p. 3. Stevens acknowledges "there has to be a liberty int[e]rest created by state regulations" in order for due process requirements to attach to visitation deprivations. FAC p. 3, *citing* Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974). He argues deprivation of family visitation constitutes "a dramatic departure from the basic conditions [of prison confinement] which [*sic*] he was never ever arrested, charged, or convicted of a sex offense, that requires a "R suffix," warranting Fourteenth Amendment Due Process protections.[1] FAC p. 4.

Defendant construes the FAC as attempting to state two civil rights claims: wrongful denial of family visitations (construed as conjugal visits, applying a formal regulatory definition), and wrongful custody classification. Defendant contends neither theory implicates a protected liberty interest, so both fail to state a Section 1983 claim and must be dismissed. As to the first, "it is well-settled that prisoners have no constitutional rights while incarcerated to contact visits or conjugal visits." Gerber v. Hickman, 291 F.3d 617, 621 (9th Cir. 2002), *citing* Kentucky Dep't of Corrs. v Thompson, 490 U.S. 454, 460, 461 (1989) ("[t]he denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, therefore is not independently protected by the Due

---

[1] Stevens also alludes in this regard to prison administration "willfully treating the plaintiff with 'deliberate indifference' by not relying on the facts of case just going on the police report which maliciously circumvents their authority." FAC p. 4. To the extent key words in those allegations suggest he attempts to state an Eighth Amendment claim, the court notes he abandoned any such express foundation for his claims in the FAC, although his original Complaint purported to proceed under a "cruel and unusual punishment" theory as well.

Process Clause"); Hernandez v. Coughlin, 18 F.3d 133, 137 (2nd Cir. 1994) (neither the Constitution nor state law created any protected guarantee to conjugal visitation privileges while incarcerated). However, as noted in the R&R, Defendant too narrowly construes Stevens' "family visitation" allegations as referring only to conjugal visits. Mot. 1:13; 3:2, 21-28. The R&R found "unclear" whether Stevens intended to use the term in the conjugal visit context or in a "more colloquial application," properly opting for the broader reading. Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623 (9th Cir. 1988). R&R p. 4 n.2, 6:7-9.

This court finds the claim must be construed from the face of the FAC as encompassing all family visitation. Not only does the liberal construction of *pro se* and civil rights pleadings obligation require the court to accept that broader inference, but also his express language mandates that reading.[2] However, this court does not concur with the statement in the R&R that Stevens does not claim "he is in any[]way denied regular visiting privileges that are available to the general prison population." R&R 6:9-10. He alleges he is permitted no visitations from relatives, presumably contrary to privileges accorded the general prison population under the "Family Visitation" policies he cites. Nevertheless, to survive Rule 12(b)(6) dismissal, the FAC must substantiate a liberty interest in the visitation deprivation he alleges, absent which he can state no cognizable right to Due Process protections attendant on that consequence of the addition of an "R" suffix custody classification or otherwise.

\\

---

[2]  In moving to dismiss, Defendant construes the "family visitation" deprivation Stevens complains of as denial of "conjugal" visitation. Mot. pp. 3-4. However, a fairer reading of the Complaint makes clear his allegations are broader than that. He alleges he is being denied "visitation with my family" (FAC p. 3), "the legal right of reasonable family visitation and visitation with their children and family members in the best interest of inmate and the family members to obtain positive relationships" (FAC pp. 3-4), he is consequently enduring "an [a]typical and significant family hardship" (FAC p. 4), and "without family visitation a prisoner may be entirely cut off from his only contacts with the outside world" (FAC p. 5). The relief he seeks is "family visitation with his family in the interest of justice and in the best interest of the family." FAC p. 5. He does not suggest overnight visits with his wife are the gravamen of his complaint, but rather consistently alludes to "family members" in the plural and mentions his children in particular. Moreover, although the FAC supersedes the original Complaint in its entirety, the Complaint made clear his allegations are much broader than Defendant's characterization of his claim as seeking conjugal visits. In particular, he originally alleged with specificity: "I have not seen my wife **and 4 children and mother** in 2 years" Compl. p. 3 (emphasis added)..

B.     **Legal Standards**

   1.     **Motions To Dismiss For Failure To State A Claim**

A FED. R. CIV. P. ("Rule") 12(b)(6) motion to dismiss tests the sufficiency of the complaint. The Rule 12(b)(6) issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims. Scheuer v. Rhoades, 416 U.S. 232, 236 (1974), *abrogated on other grounds by* Harlow v. Fitzgerald, 457 U.S. 800 (1982). Dismissal is warranted where the complaint lacks a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc.,749 F.2d 530, 534 (9th Cir. 1984); *see* Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law"). A complaint may also be dismissed where it presents a cognizable legal theory, but fails to plead facts essential to the statement of a claim under that theory. Robertson, 749 F.2d at 534; *see* Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988). Leave to amend "shall be freely given when justice so requires." Rule 15(a); *see* DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (when a Rule 12(b)(6) motion is granted, leave to amend is ordinarily denied only when it is clear that the deficiencies of the complaint cannot be cured by amendment). In civil rights cases, courts must liberally construe the pleadings and resolve doubts in favor of the plaintiff, and "[a] *pro se* litigant must be given leave to amend his or her complaint unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" Karim-Panahi, 839 F.2d at 623-24 (citation omitted); *see also* Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations; . . . a plaintiff's obligation to provide "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . .

\\

\\

Bell Atlantic Corp. v. Twombly, -- U.S. --, 127 S.Ct. 1955, 1964 (May 21, 2007), *quoting and abrogating* Conley v. Gibson, 355 U.S. 41, 47 (1957).[3]

In deciding Rule 12(b)(6) motions, the court assumes the truth of all factual allegations, including all reasonable inferences to be drawn from the facts alleged, and construes them in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations, nor need the court accept as true conclusory allegations or unreasonable inferences. Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987). In construing the pleading, courts also may not "supply essential elements of the claim that were not initially pled." Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982) ("Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss").

## 2.   42 U.S.C. § 1983 Actions

Stevens seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), which provides, in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." Accordingly, to sustain a Section 1983 action, the allegations must show (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived the plaintiff of a constitutional right. *See* Balistreri, 901 F.2d at 699; West v. Atkins, 487 U.S. 42, 48 (1988).

\\

---

[3]   Conley's "no set of facts" language "has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic, 127 S.Ct. at 1969. "It is not . . . proper to assume that [the plaintiff] can prove facts that it has not alleged or that the defendants have violated the [laws] in ways that have not been alleged." Id. at 1969 n.8 (emphasis added) (citation omitted).

### 3.   **Fourteenth Amendment Liberty Interests**

The Fourteenth Amendment provides that no state shall deprive a person of life, liberty, or property without due process of law. These procedural guarantees apply only when a constitutionally-protected liberty or property interest is at stake. Board of Regents v. Roth, 408 U.S. 564, 569-70 (1972) (the Fourteenth Amendment's Due Process Clause does not trigger the need for procedural protections in every instance involving the state's deprivation of an individual's liberty, but only when there is a cognizable liberty interest at stake); *see* Ingraham v. Wright, 430 U.S. 651, 672 (1977). Protectable liberty interests arise from the Fourteenth Amendment's Due Process Clause itself, or from state laws or regulations deemed to have created a liberty interest cognizable as a civil right. Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Wolff, 418 U.S. at 557-58 (describing minimum safeguards applicable before a cognizable liberty interest may be infringed, such as before withdrawing sentence credits a prisoner has already acquired).

To survive Rule 12(b)(6) review, the complaint must allege facts permitting a finding the plaintiff has a liberty interest at stake, arising from either the Due Process clause or from state-created sources. Sandin v. Conner, 515 U.S. 472, 477-78 (1995) (examining whether state prison regulations or the Due Process Clause afforded inmate a protected liberty interest that would entitle him to procedural protections before transfer into segregation); *see* Roth, 408 U.S. at 569 ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property").

> These interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to the protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin, 515 U.S. at 482.

Changes in a prisoner's conditions of confinement can amount to a deprivation of a liberty interest constitutionally protected under the Due Process Clause, but only if the liberty interest in question is one of real substance. Sandin, 515 U.S. at 477-78. Only in those

1   cases where a sufficiently substantial liberty interest is at stake must the court evaluate
2   whether the process received comported with minimum procedural due process
3   requirements. Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003), *quoting* Resnick v.
4   Hayes, 213 F.3d 443, 448 (9th Cir. 2000) (*quoting* Sandin, 515 U.S. at 484). If the court
5   answers the first question in the negative, the plaintiff has failed to state a Section 1983
6   claim for a Fourteenth Amendment violation.

7   In order to find a liberty interest conferred by state law, the analysis focuses on the
8   nature of the deprivation rather than on the language of any particular regulation, to avoid
9   involvement of federal courts in day-to-day prison management. *See* Sandin, 515 U.S. at
10  479-82, 483 (abandoning prior test of Hewitt v. Helms, 459 U.S. 460 (1983), which focused
11  on the mandatory or discretionary language of a regulation to identify whether it created a
12  liberty interest: "The time has come to return to the due process principles we believe were
13  correctly established in [Wolff, 418 U.S. 539] and [Meachum, 427 U.S. 215]"); *see also* May
14  v. Baldwin, 109 F.3d 557, 565 (9th Cir.1997) (convicted inmate's due process claim fails
15  because he has no liberty interest in freedom from state action taken within sentence
16  imposed, and administrative segregation falls within the terms of confinement ordinarily
17  contemplated by a sentence). Protectable liberty interests created by state law are
18  "generally limited to freedom from restraint which . . . imposes atypical and significant
19  hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S.
20  at 483-84; *see also* Keenan v. Hall, 83 F.3d 1083, 1088-89 (9th Cir. 1996) (prison
21  classification created no "atypical and significant hardship" because it would not invariably
22  affect the duration of the inmate's sentence) (interpreting Sandin).

### 4.   R&R Review Standards

24  A district judge "may accept, reject, or modify the recommended decision, receive
25  further evidence, or recommit the matter to the magistrate judge with instructions" on a
26  dispositive matter prepared by a magistrate judge proceeding without the consent of the
27  parties for all purposes. Rule 72(b); *see* 28 U.S.C. § 636(b)(1).   An objecting party may
28  \\

1  "serve and file specific objections to the proposed findings and recommendations," and "a
2  party may respond to another party's objections."  Rule 72(b).
3      In reviewing an R&R, "the court shall make a *de novo* determination of those portions
4  of the report or specified proposed findings or recommendations to which objection is made."
5  28 U.S.C. §636(b)(1); United States v. Raddatz, 447 U.S. 667, 676 (1980) (when objections
6  are made, the court must make a *de novo* determination of the factual findings to which
7  there are objections).  The court also reviews *de novo* the magistrate judge's conclusions of
8  law.  Gates v. Gomez, 60 F.3d 525, 530 (9th Cir. 1995).  "If neither party contests the
9  magistrate's proposed findings of fact, the court may assume their correctness and decide
10 the motion on the applicable law."  Orand v. United States, 602 F.2d 207, 208 (9th Cir.
11 1979).  "[D]eterminations of law by the magistrate judge are reviewed *de novo* by both the
12 district court and [the court of appeals]. . . ."  Robbins v. Carey, 481 F.3d 1143, 1146-47 (9th
13 Cir. 2007).  Here, the court need only address the disposition of the Petition based on
14 conclusions of law, as no party has filed objections to the R&R.
15      **C.    Dismissal Is Warranted**
16      Stevens urges the court to find denial of family visitation privileges to be a violation
17 of his "constitutional rights to due process, life, and liberty" because he alleges he has been
18 wrongly assigned a custody classification as a sex offender, resulting in the visitation
19 restrictions.  The court's threshold inquiry, accordingly, is whether Stevens' deprivation of
20 family visitation imposed "atypical and significant hardship" implicating a protected liberty
21 interest.  If so, the court must then determine what process he was due and whether he
22 received it.  *See, e.g.* Wilkinson v. Austin, 545 U.S. 209 (2005) (holding that segregated
23 confinement of indefinite duration in a "supermax" prison that rendered inmates ineligible for
24 parole consideration created a combination of factors that implicated a liberty interest, but
25 the state's informal, nonadversary procedures for placement there were adequate to
26 safeguard inmates' liberty interest in not being assigned to supermax prison).  Stevens relies
27 on Hoversten v. Superior Court, 74 Cal.App.4th 636 (1999) for the proposition
28 "inmates/parolees retain the legal right of family visitation and visitation with their children

and family members. . . ." FAC p. 3.  However, that case is distinguishable on its facts, addressing an access to courts question in circumstances where the inmate had not been able to appear, due to his incarceration, at marital dissolution hearings where his parental rights were adjudged.

The Supreme Court has identified few protected liberty interests within the prison context requiring procedural due process protections.  *See* <u>Serrano v. Francis</u>, 345 F.3d 1071, 1078 (9th Cir. 2003).[4]  Stevens has no liberty interest in family visitation while incarcerated arising under the Constitution itself adequate to trigger the due process protections of the Fourteenth Amendment. <u>Kentucky Dept. of Corrections v. Thompson</u>, 490 U.S. 454, 460-61 (1989) (no liberty interest in visits with "a particular visitor"); <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1113 (9th Cir. 1986) (contact visitation); <u>Hernandez v. Coughlin</u>, 18 F.3d 133, 137 (2nd Cir. 1994) (conjugal visitation); *see also* <u>Lynott v. Henderson</u>, 610 F.2d 340, 342 (5th Cir. 1980) ("Convicted prisoners have no absolute constitutional right to visitation"); <u>Overton v. Bazzetta</u>, 539 U.S. 126, 136-37 (2003) (upholding prison regulations banning visitation privileges entirely for a two-year period for inmates with two substance abuse violations and regulating the conditions of visitations by others as not affecting constitutional rights that survive incarceration), *citing* <u>Sandin</u>, 515 U.S. at 485.  Any such liberty interest must accordingly be conferred by state regulations.

California prison regulations consistently refer to visitation as a "privilege" rather than a "right," and one which may be granted, denied or modified for any number of reasons within the discretion of the CDC.  *See e.g.* 15 CAL. CODE REGS. §§ 3176.4, 3177(b). California has not created liberty interests enforceable by prisoners in either classification or in visitation. <u>Myron v. Terhune</u>, 476 F.3d 716, 718 (9th Cir. 2007), *cert. denied.* 128 S.Ct. 396 (Oct. 9, 1007) (classification); <u>Torricellas v. Poole</u>, 954 F.Supp. 1405, 1414-15 (C.D.Cal.

---

[4] Stevens appears to have abandoned any Eighth Amendment claim that might have been attempted in the statement of his claims in his original Complaint.  "[E]xtreme deprivations are required to make out a conditions-of-confinement claim."  R&R 11:26-27, *quoting* <u>LeMaire v. Maass</u>, 12 F.3d 1444, 1456 (9th Cir. 1993) (internal citations omitted) (holding none of the practices in a disciplinary segregation unit challenged under the Eighth Amendment was unnecessary or caused the plaintiff harm rising to the level of a constitutional violation).

1 1997), *aff'd* 141 F.3d 1179 (9th Cir. 1998) (visitation). As Stevens himself acknowledges, absent a liberty interest in family visitation privileges, he cannot invoke the due process protections elaborated in Wolff to challenge his "R" classification that allegedly cut them off. The only regulations relied on in the FAC relate to the "R" classification process and the policies and procedures associated with institutional "guidelines" permitting "Family Visitation" Stevens contends have not been followed in his case. FAC p. 3. The facts of this case are similar to those presented in a Section 1983 action decided by the undersigned District Judge while serving as a magistrate judge, Cooper v. Garcia, 55 F.Supp.2d 1090 (S.D. Cal. 1999). That plaintiff alleged he lost his conjugal visitation privileges after prison officials decided to classify him as an "R" suffix prisoner without first conducting an "individualized assessment" of his risk to others to justify the classification. That ruling discussed at length California's Family Visitation program and its status as a privilege from which several categories of prisoners are excluded.[5] *See* Cooper, 55 F.Supp. at 1098-99.

The court finds the visitation privileges of the Family Visitation protocols Stevens contends constitute an actionable deprivation do not embody a cognizable liberty interest upon which he may base a Due Process violation claim. Loss of privileges associated with a change in custody status simply do not "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" (Sandin, 515 U.S. at 484) compared to other similarly classified inmates, a showing Stevens does not attempt. The "R" suffix classification designating Stevens as a sex offender could give rise to a liberty interest only if the Sandin deprivations are implicated. As noted in the R&R, prisoners have no constitutional right to a particular classification status arising directly from the Fourteenth Amendment or from state law because they have no liberty interest vested in custody classification decisions. Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); *see* Grennier v. Frank, 453 F.3d 442, 445 (7th

\\

---

[5] That opinion also canvases several circuit's treatment in the negative of the question whether deprivation of family visitation privileges implicates a "liberty interest" subject to the Due Process protections of the Fourteenth Amendment.

Cir. 2006) (sex offender classification not subject to procedural protection when there is no impact on non-discretionary programs).

Stevens relies on Neal v. Shimoda, 131 F.3d 818, 827-28 (9th Cir. 1997) for the proposition "an inmate whom the prison intends to identify as a sex offender is legally and lawfully entitled to be notified of the alleged reasons for his classification as a sex offender, and to legally have a hearing where he must be provided an opportunity to call witnesses and to present documentary evidence in his defense produce [*sic*] the police report of said offense." FAC pp. 4-5. However, Neal is distinguishable. As pertinent here, the Neal court held the state's requirement a prisoner complete a sex offender treatment program and confess to past sex offenses as a precondition to parole eligibility created a liberty interest protected by due process, triggering the Fourteenth Amendment's protections.[6] Neal, 131 F.3d at 827 ("[T]he stigmatizing consequences of the attachment of the 'sex offender' label *coupled with* the subjection of the targeted inmate to a mandatory treatment program whose completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections") (emphasis added). The "sex offender" label standing alone apparently would not have caused the Neal court to recognize a liberty interest in remaining free from that classification. The cognizable liberty interest arose only when the custody classification was coupled with the mandatory treatment program which the inmate had to successfully complete before becoming eligible for parole, which the court found implicated the "kind of deprivations of liberty that require procedural protections." Neal, 131 F.3d at 830; *see also* Cooper, 55 F.Supp.2d at 1102 (finding, in consideration of the Neal authority, "the liberty interest at stake must be more than a mere 'sex offender' classification," requiring in addition "some mandatory coercive treatment" associated with the classification "which affects a liberty interest, such as parole").

---

[6] Stevens also relies on Edward v. Balisok, 520 U.S. 641 (1997) for the proposition Due Process requires he receive an audit of his "C-file Central File" in order "to legally correct" the resulting "injustice" of family visitation deprivations. FAC p. 5. However, the Balisok case is also distinguishable. That case addressed a prisoner's claim his due process rights were violated by procedures used in a disciplinary hearing that resulted in the deprivation of good time credits he had earned.

1    Stevens alleges no facts from which it may be inferred that his parole eligibility or good time credits or any other effect that could impact the fact or duration of his conviction and sentence is implicated, nor that he is compelled to complete a sex offender program before he can be parole-eligible, nor that he confess to past sex offenses or the like, from which a combination of factors could be found to trigger a liberty interest.  Those distinctions preclude a finding the institution's mere withholding from Stevens application of its Family Visitation guidelines created a cognizable liberty interest deprivation.  He has alleged no facts to substantiate the fact or duration of his imprisonment is in any way affected by the "R" suffix attached to his custody classification.

This court finds no basis to deviate from its prior assessment of the visitation issue expressed in Cooper:  inmates do not have a liberty interest in the state family visitation program within the meaning of Sandin, and therefore cannot state a claim for procedural due process violations associated with visitation deprivation.  Implementation of the Family Visitation "guidelines" within prisons is a matter of institutional discretion.  As this court observed in Cooper, a person in plaintiff's position, barred from family visits even though never convicted of a sex offense, may deserve sympathy, but the court is not empowered to act in the absence of a constitutional violation.  It may not fashion a remedy in a Section 1983 action without a cognizable liberty or property interest at stake.  The court finds Stevens' FAC does not allege claims upon which relief may be granted, and leave to amend would be futile.

## II.    CONCLUSION AND ORDER

For the foregoing reasons, the R&R is **ADOPTED**.  **IT IS HEREBY ORDERED** Defendant's unopposed Motion is **GRANTED**, and Stevens' FAC is **DISMISSED**, without leave to amend his pleading a third time to attempt to state a claim, terminating this case.

**IT IS SO ORDERED**.

DATED: March 6, 2008

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge